1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**James C. Mahan**
**U.S. District Judge**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILLIAM C. DONLON and
MARIANNE P. TRUTA,

              Plaintiff(s),

v.

LAS VEGAS METROPOLITAN
POLICE DEPARTMENT, et al.,

              Defendant(s).

2:11-CV-1614 JCM (GWF)

**ORDER**

Presently before the court is defendant Las Vegas Metropolitan Police Department's ("LVMPD") motion for summary judgment.  (Doc. # 41).

Also before the court is defendant officers Vellotti and White's motion for summary judgment.  (Doc. # 42).  Plaintiffs William Donlon and Marianne Truta have filed a consolidated response (doc. # 49) and defendants have filed a consolidated reply (doc. # 52).

Finally before the court is plaintiffs' motion for summary judgment.  (Doc. # 43). Defendants have responded (doc. # 48) and plaintiffs have replied (doc. # 53).

**I.**    **Background**

The complaint stems from the arrest of plaintiff Donlon while he and plaintiff Truta were traveling through the McCarran International Airport ("airport").  Defendants Vellotti and White are officers employed by defendant LVMPD and were assigned to the airport that day.

On August 11, 2010, plaintiffs checked out of the MGM Grand around 1:00 p.m. and left for the airport to fly home to Oregon. Upon arrival, they attempted to check in at a kiosk for their 6:30 p.m. flight. While checking in, plaintiffs were given the option to take a spot on an earlier flight if they paid an additional fee, which they elected to do. When Donlon printed the tickets out, he noticed they were not for an actual seat, but were instead for standby.

Unhappy with his standby tickets, Donlon went to the United Airlines ticketing counter to speak to a representative. He was directed to Anthney Spartz, an agent on the floor who was assisting customers in line. Donlon explained the situation to Spartz, and Spartz told Donlon he would have to go to the gate to discuss it with the agents there. Donlon was unsatisfied with Spartz's response, and the two become involved in some level of discussion. At this point the parties' versions of the subsequent events differ.

According to Donlon, he was simply dissatisfied with the response and treatment he received from Spartz, and was relatively cordial. When Spartz allegedly refused to give Donlon her name, Donlon took out his cell phone and began recording the encounter. While continuing to converse with Spartz, Donlon alleges he was suddenly, and without warning, tackled from behind by Vellotti and placed under arrest. Donlon maintains that he was compliant with the officers throughout the encounter.

Defendants offer a different version of the events. According to them, Donlon raised his voice from the beginning and continued to become increasingly louder and more aggressive. Donlon allegedly wanted his money back, wanted to be put in the front of the line ahead of all other customers, and was yelling at Spartz when he did not receive the response he desired.

Officer Vellotti was stationed on the second floor of the airport overlooking the ticketing area. Vellotti alleges he was first alerted to the incident when he heard Donlon yelling. He further alleges that he saw Donlon with his fist approximately one inch away from Spartz's face, that Donlon had one foot in front of the other in a "combat or fighter's stance," and that he was highly agitated. Vellotti asserts that he witnessed Truta pulling on Donlon from behind, trying to step between Donlon and Spartz, and attempting to push Donlon away. Truta denies she ever attempted

1    to stand between the two.

2          Based on his observations, Vellotti determined an arrest needed to be made given what he

3    perceived to be an imminent battery, as well as for "loud and tumultuous noises," which is a

4    violation of airport rules.  *See* Clark County Code 20.04070.   Vellotti alleges that when he

5    approached Donlon and told him he was under arrest, Donlon brought his arms towards his

6    midsection and yelled "no."  Donlon allegedly resisted Vellotti's attempts to place handcuffs on him,

7    at which point Vellotti performed an "ignition twist"[1] to bring Donlon to the ground.  At this point

8    White responded to the encounter and assisted Vellotti in securing the handcuffs.  Plaintiff Truta was

9    nearby and witnessed this series of events.

10         White remained with Truta and explained to her what was happening to her husband and how

11   she could pick him up.  During this time, Donlon was taken upstairs to be processed and interviewed.

12   When Vellotti noticed Donlon's wrists were bleeding, Donlon responded that he was on blood

13   thinners and that he had been drinking at lunch.

14         Vellotti testified that although he believed an assault had taken place and a battery was

15   imminent, the stated reason for arrest was ultimately for violating airport rules.  That charge was

16   later dropped.

17         Donlon asserts that he was "attacked" by officer Velotti and that excessive force was used

18   causing injury to his wrist.  Donlon further asserts he is disabled and was under treatment for severe

19   osteoarthritis of the spine at the time of his arrest, and his disabilities were apparently aggravated by

20   the incident.  Truta claims White was abusive toward her and that she was traumatized having

21   witnessed the arrest of Donlon.

22         Based on these events, the complaint asserts federal claims under 42 U.S.C. § 1983 and state

23   law claims for negligent hiring, retention, training, and supervision, battery, intentional infliction of

24   emotional distress, negligent infliction of emotional distress, and "respondeat superior for torts."

25   . . .

26

27         [1] According to defendants, an ignition twist is a maneuver whereby an officer applies force to an individual's

28   wrist in order to control the suspect and place handcuffs on him.

**James C. Mahan**
**U.S. District Judge**

## II.     Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

James C. Mahan
U.S. District Judge

- 4 -

1   In other words, the nonmoving party cannot avoid summary judgment by relying solely on

2   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

3   (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

4   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

5   for trial. *See Celotex Corp.*, 477 U.S. at 324.

6   At summary judgment, a court's function is not to weigh the evidence and determine the

7   truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

8   477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

9   inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

10  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

11  249–50.

12  **III.    Discussion**

13  As an initial matter, the court notes that plaintiffs' arguments in support of their first claim

14  seem to evolve. As pleaded in the complaint, the first claim appears to focus on the surprise "attack"

15  on Donlon and his and Truta's subsequent emotional trauma.

16  Over the course of briefing, however, plaintiffs' arguments transform to include a claim that

17  the airport ordinance prohibiting loud and tumultuous noises is itself in violation of the First

18  Amendment, and that Donlon's arrest for allegedly violating that ordinance was therefore

19  unconstitutional. Plaintiffs have not sought declaratory relief that the subject ordinance is

20  unconstitutional, and the attched opinion by a local justice of the peace holding that the ordinance

21  was unconstitutional as applied in that particular case (of which the facts are unclear) is not binding

22  on this court.

23  The court can rule only on claims properly raised within the four corners of the complaint.

24  As pleaded by the complaint, plaintiffs' claims appear to be focused only on allegations stemming

25  from the use of excessive force. Accordingly, the court will not address any argument related to the

26  ordinance, and will limit its analysis of the constitutional claims to the issue of force.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1          *1.     Violations of plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42*

2                 *U.S.C. § 1983*

3          Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights,

4   privileges, or immunities secured by the Constitution and laws" of the United States. "To state a

5   claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the

6   Constitution or laws of the United States was violated, and (2) that the alleged violation was

7   committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles,* 442 F.3d

8   1178, 1185 (9th Cir. 2006).

9          To determine whether the force used by the officers was excessive under the Fourth

10  Amendment, it must be determined whether it was objectively reasonable "in light of the facts and

11  circumstances confronting [the officers], without regard to their underlying intent or motivation."

12  *Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, this determination requires a resolution of the

13  sequence of events leading up to, and including, the arrest.

14         According to plaintiffs' version of the events, Donlon was dissatisfied with Spartz's response

15  and simply "engaged in a conversation" with her. Donlon maintains that he was not aggressive

16  towards Spartz and did not touch her. Plaintiffs have submitted a brief recording taken from

17  Donlon's cell phone in support. The recording is 38 seconds long and begins at some point during

18  Donlon's conversation with Spartz. Although his speech is somewhat slurred and he sounds

19  intoxicated, Donlon is calm, does not raise his voice, and does not make any threats towards Spartz.

20  Spartz cannot be seen in the video so it is unclear where she was in proximity to Donlon. At

21  approximately 25 seconds into the video, it appears Donlon is tackled to the ground, without

22  warning, and told "you are under arrest." Donlon cannot be heard yelling "no," and does not appear

23  to resist. This short video tends to corroborate plaintiffs' version of the events.

24         However, the video does not portray the bulk of Donlon's "conversation" with Spartz, and

25  instead picks up at the very end. Spartz may be heard on the video saying "you were very rude to

26  me" and "you've been hollering and screaming at me." Spartz's statements on camera provide

27  credence to Vellotti's version of the events. Due to the timing of the video, there is no evidence to

28

**James C. Mahan**
**U.S. District Judge**

1   refute Vellotti's testimony that Donlon was standing very close to Spartz, had his fist in her face, and

2   was in an aggressive stance.  Indeed, as the video was taken to serve his own interests, it logical that

3   Donlon may have tempered his own behavior once he started recording.       Spartz's account does not

4   tend to prove or disprove either version of events.  Upon questioning from plaintiffs' counsel, Spartz

5   testified in her deposition that she didn't necessarily "feel" she was the victim of a "crime," but that

6   she did feel that Donlon was overreacting, that he continuously raised his voice, was "being very

7   belligerent" towards her, and made her "nervous."[2]  Spartz testified that she told Donlon she would

8   not speak to him until he calmed down and begin to walk away.  By the time she turned around,

9   Vellotti already had Donlon on the floor.  Spartz did not see Vellotti approach Donlon and did not

10   witness the initial force used.

11   In short, the facts surrounding the incident are in dispute, and the court is therefore unable

12   to determine whether Donlon's constitutional rights were violated.  Both parties' motions for

13   summary judgment are denied.

14       *2.     Conspiracy under 42 U.S.C. § 1983*

15   The second claim for relief alleges that Vellotti and White conspired with one another for

16   the purpose of depriving Donlon of his rights by "not allowing plaintiff to leave their custody when

17   he had not committed any crime" and by "falsely detain[ing] and batter[ing]" him.  (Compl. ¶ 26).

18   Plaintiff has not provided any binding case law which would support bringing a claim under

19   section 1983 for conspiracy *between two state actors*, and the court is unaware of any.

20   Although in the context of 42 U.S.C. § 1985, the Ninth Circuit has acknowledged a split

21   amongst the circuits regarding the "intra-corporate conspiracy" doctrine and has expressly declined

22   to take a position.  *See Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993).  As

23   recognized by other circuits, the doctrine bars a section 1985 conspiracy claim when the alleged

24   conspiracy is amongst state actors.  *See, e.g., Runs After v. United States*, 766 F.2d 347, 354 (8th

25   Cir.1985)(holding a governmental body cannot conspire with itself and individual members acting

26   in their official capacities cannot conspire with one another under 1985).

27   ───────────────

28       [2] Whether Donlon's conduct constituted a crime is a legal conclusion which Spartz was incapable of providing.

James C. Mahan
U.S. District Judge

1    Courts outside this circuit have also recognized that this claim is likewise barred under

2    section 1983.  *See, e.g., Grider v. City of Auburn*, 618 F.3d 1240, 1261-63 (11th Cir. 2010)(section

3    1983 claim cannot be based upon conspiracy carried out by police department or police officers);

4    *Saad v. City of Dearborn Heights*, 876 F. Supp. 2d 925, 941 (E.D. Mich. 2012)(section 1983

5    conspiracy claim based on actions by police in their capacity as police officers barred by intra-

6    corporate conspiracy doctrine); *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 387, 402 (E.D.N.Y.

7    2010)(section 1983 conspiracy claims against members of county police department, acting within

8    scope of their employment, found barred by intra-corporate conspiracy doctrine).

9    To the extent such a claim may be permissible in this circuit, plaintiffs would nonetheless

10   be required to demonstrate the existence of "an agreement" or "meeting of the minds" to violate

11   constitutional rights.  *United Steel Workers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-

12   41 (9th Cir. 1989)(discussing claim for conspiracy between private and state actors brought under

13   section 1983).  The defendants must have, "by some concerted action, intend[ed] to accomplish some

14   unlawful objective for the purpose of harming another which results in damage." *Vieux v. East Bay*

15   *Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990)).

16   The undisputed facts show that Vellotti and White responded to the incident at different times

17   and from different locations.  White testified that he heard Vellotti's request for assistance while the

18   arrest was already taking place, and did not arrive to assist until Donlon was already on the ground.

19   Plaintiffs have not alleged any facts suggesting the two officers communicated in any manner or

20   otherwise had a "meeting of the minds" prior to the arrest.  Accordingly, summary judgment is

21   granted in favor of defendants as to this claim.

22       *3.    Monell liability*

23   The third claim for relief seeks to impose liability for Vellotti's and White's acts upon

24   LVMPD under *Monell*.

25   "Municipalities" are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a

26   constitutional deprivation." *Long,* 442 F.3d at 1185 (citing *Monell v. Dep't of Soc. Servs. of City of*

27   *New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[T]he municipality itself

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

must cause the constitutional deprivation and [ ] a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior." *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992).

This claim provides an example of the plaintiffs' disorganized and inconsistent approach to pleading and subsequently briefing their claims. In the complaint, this claim alleges that "[i]t was the policy, *inter alia* or custom of Metro LVMPD to inadequately and improperly investigate citizen complaints of police misconduct and acts of misconduct were tolerated including. . .stopping disabled people without legal cause and using excessive force upon them and falsely arresting them." (Compl., doc. # 1, ¶ 30).

The complaint also alleges that "it was policy and/or custom of Metro to inadequately supervise and train its police officers. . .including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. Metro did not require appropriate in-service training or re-training of officers who were known to have engaged in misconduct." (*Id.* at ¶ 31). The claim makes no reference to the ordinance or its constitutionality. It is therefore apparent that the claim revolves around the amount of force used in arresting Donlon.

However, in their motion for summary judgment, plaintiffs shift focus and rely exclusively on the allegedly unconstitutional ordinance as the basis for their *Monell* claim. (*See* doc. # 43, p. 9-10). As the complaint does not contain a claim for declaratory relief regarding the ordinance, plaintiffs' arguments against it raised for the first time at summary judgment are not properly before the court.

As a result, by default the claim simply alleges that LMVPD is liable based on the allegedly tortious conduct of its officers, without specifically identifying any policy or custom held by LVMPD which can be fairly said to be the driving force behind the constitutional violation(s). As it is clearly established that municipalities may not be held liable under section 1983 based on the theory of *respondeat superior*, this claim fails. *Gillette*, 979 F.2d at 1346. Summary judgment is granted in favor of LVMPD.

. . .

James C. Mahan
U.S. District Judge

- 9 -

1          4.       *Negligent hiring, retention, training, and supervision*

2          Plaintiffs seek to hold the LVMPD liable for negligently hiring, training, retaining, and

3     supervising Vellotti and White.

4          The Ninth Circuit has held that "decisions related to the hiring, training, and supervision of

5     employees usually involve policy judgments of the type Congress intended the discretionary function

6     exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)(*citing Gager v.*

7     *United States*, 149 F.3d 918, 920-22 (9th Cir. 1998); *Nurse v. United States*, 226 F.3d 996 (9th Cir.

8     2000).

9          Relying on the Ninth Circuit and other courts in this district, this court has specifically held

10    that Nevada's discretionary immunity statute, NRS 41.032(2),[3] bars claims for negligent hiring,

11    training, and supervision.  *See Beckwith v. Pool*, case no. 2:13-cv-125-JCM-NJK, 2013 WL

12    3049070, *5-6 (D. Nev. June 17, 2013); *Cherry v. CCSD et al*, case no. 2:11-cv-1783-JCM-GWF

13    (D. Nev. Apr. 22, 2014); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F.Supp.2d 1170, 1192

14    (D. Nev. 2008)("Because Nevada looks to federal case law to determine the scope of discretionary

15    immunity, and because federal case law consistently holds training and supervision are acts entitled

16    to such immunity, LVMPD is entitled to discretionary immunity on this claim.").

17        Plaintiffs' counsel was counsel of record in *Beckwith* and is well aware that the LVMPD

18    cannot, as a matter of law, be liable on this claim.  Summary judgment is granted in favor of

19    defendants.

20        5.       *Battery*

21        Donlon alleges he was unlawfully battered by Velotti and White during the arrest.  In

22    response, defendants argue that they were reasonably carrying out their duties as police officers,

23

24        [3] NRS 41.032(2) states in relevant part that no tort shall be brought "[b]ased upon the exercise or performance
25    or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or
      political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion
26    involved is abused."  This is often referred to as the "discretionary function exception."

27

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

specifically acting in defense of Spartz.

A battery occurs where a defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (quoting Restatement (Second) of Torts, § 21 (1965)).  Police officers are allowed to use force which appears reasonably necessary, but when they use more force than is necessary, they may be liable for battery. *Ramirez v. City of Reno*, 925 F.Supp. 681, 690-91 (D. Nev. 1996).

Because a genuine issue of material fact exists as to the events leading up to the arrest, including the amount of force actually used in effectuating the arrest, the court is unable to evaluate its reasonableness in light of the disputed circumstances.  Both plaintiffs' and defendants' motions for summary judgment are denied.

> 6.   *Intentional and negligent infliction of emotional distress*

A claim for intentional infliction of emotional distress ("IIED") requires proof that (1) the defendant's conduct was extreme and outrageous, (2) that the defendant either intended to cause or recklessly disregarded the risk of causing emotional distress, (3) that the plaintiff actually suffered severe or extreme emotional distress, and (4) that the distress was actually or proximately the result of the defendant's conduct. *Ramirez*, 925 F.Supp. at 690 (*citing Branda v. Sanford*, 97 Nev. 643 (1981)).

Similarly, a claim for negligent infliction of emotional distress claim requires a showing that (1) the bystander plaintiff is closely related to the victim of an accident; (2) the bystander plaintiff was located near the scene of the accident; and (3) the bystander plaintiff suffered a shock resulting from a direct emotional impact stemming from the sensory and contemporaneous observance of the accident. *See Crippens v. Savon Drug Stores*, 114 Nev. 760, 762, 961 P.2d 761, 762 (Nev. 1998).

"Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (Nev. 1998).  The resulting distress must be so intense that no reasonable person could be expected to endure it; general physical or emotional discomfort is insufficient. *Watson v. Las Vegas Valley Water Dist.*, 378 F. Supp.2d 1269, 1279 (D. Nev. 2005).

James C. Mahan
U.S. District Judge

- 11 -

1    The evidence shows only that Donlon suffered minor abrasions from the handcuffs on his

2    wrists, and Truta has alleged only that she was "traumatized by having witnessed the violent arrest

3    of her husband" and was "later caused to wait in the jail for 11 hours without knowing [Donlon's]

4    status or well being." The minor abrasions suffered by Donlon were not physical manifestations of

5    his distress, and Truta has not provided any evidence that witnessing the encounter physically

6    affected her in a manner required by this claim.

7        Furthermore, the court finds that no reasonable juror would conclude that the stress allegedly

8    suffered by plaintiffs amounts to a level so extreme or severe as to be actionable under the law.

9    Summary judgment is granted in favor of defendants on these claims.

10       *7.    Respondeat superior*

11       Plaintiffs' eighth and final claim is one for "respondeat superior for torts." (Compl. ¶ 59-63).

12   The claim seeks to hold the LVMPD liable for the torts allegedly committed by Vellotti and White.

13       However, *respondeat superior* is a theory of attributing liability, and is not itself a stand-

14   alone claim for relief. Again, plaintiffs' counsel sought to bring the same claim before this court in

15   *Beckwith* and was likewise instructed that it is not a cause of action. *Beckwith*, 2013 WL 3049070

16   at *7. Counsel is advised if he wishes for the most expedient resolution of his clients' claims, he

17   would be wise to refrain from asserting those he knows from experience fail as a matter of law.

18   Summary judgment is granted in favor of defendants.

19   **IV.    Conclusion**

20       The court concludes that there are triable issues of material fact in regards to the

21   circumstances surrounding the encounter. Consequently, the cross-motions for summary judgment

22   are denied as to the first and fifth causes of action.

23       Conversely, the court finds that there are no triable issues of fact with respect to the second,

24   third, fourth, sixth, seventh, and eighth causes of action. Summary judgment on those claims is

25   entered in favor of defendants.

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 12 -

1    Accordingly,

2        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for

3    summary judgment (doc. # 43) be, and the same hereby is, DENIED.

4        IT IS FURTHER ORDERED that LVMPD's motion for summary judgment (doc. # 41) be,

5    and the same hereby is, GRANTED.

6        IT IS FURTHER ORDERED that defendants Vellotti's and White's motion for summary

7    judgment (doc. # 42) be, and the same hereby is, GRANTED in part and DENIED in part, consistent

8    with the foregoing.

9        DATED May 15, 2014.

10

11                                              _____
                                                UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge                                    - 13 -